UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JENNIE OGLESBY                                    CIVIL ACTION

VERSUS                                            NO: 16-13018

NEILL CORPORATION                                 SECTION: "J" (4)

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment Regarding Notice, Waiver, and Causation* **(Rec. Doc. 26)** filed by Defendant Beauty Basics, Inc. d/b/a Aveda Institute Birmingham ("Defendant"), an opposition thereto (Rec. Doc. 51) filed by Plaintiff Jennie Oglesby ("Plaintiff"), and a reply (Rec. Doc. 59) filed by Defendant. Also before the Court is a *Motion for Partial Summary Judgment on Punitive Damages* **(Rec. Doc. 27)** filed by Defendant, an opposition thereto (Rec. Doc. 52) filed by Plaintiff, and a reply (Rec. Doc. 58) filed by Defendant. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motions should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This is a slip and fall case emanating from an incident that occurred while Plaintiff was in the Aveda Institute of Birmingham ("Aveda Institute") beauty school in Birmingham, Alabama. On July 31, 2015, Plaintiff entered the Aveda Institute to have her hair done. Before receiving her hair treatment, Plaintiff signed a

1

release form ("release") whereby she agreed not to bring suit against Defendant for injury or damage she might suffer while she was at the Aveda Institute. Plaintiff alleges that during her hair treatment, she was led from her chair to the sink area to rinse her hair. At this point, Plaintiff slipped. Plaintiff alleges that she lost her footing because a significant amount of water had accumulated on the floor and she stepped in it. Plaintiff stumbled into the cabinet and never actually fell to the ground. Nevertheless, Plaintiff alleges that this accident loosened old wounds from previous abdominal surgeries, causing her new injuries and extreme pain.

Plaintiff filed suit in this Court on July 20, 2016, alleging that Defendant's negligence and gross negligence were the sole causes of her injuries. On March 14, 2017, Defendant filed the instant motions for summary judgment. Both motions are before the Court on the briefs and without oral argument.

## **PARTIES' ARGUMENTS**

Defendant argues that the Louisiana Merchant Liability Act applies to this case and that Plaintiff cannot meet her burden of proof under the Act. Defendant also argues that Plaintiff executed a valid waiver that released Defendant from liability. Additionally, Defendant argues that Plaintiff has failed to demonstrate a causal connection between the accident and her injuries. Finally, Defendant argues that its conduct did not

2

qualify as willful or wanton and summary judgment should be granted on Plaintiff's claim for punitive damages.

In opposition, Plaintiff first argues that Alabama law applies to this case and the Louisiana Merchant Liability Act is not applicable. Plaintiff also argues that the release she signed does not preclude her from bringing this suit. Finally, Plaintiff argues that she has made a prima facie claim of negligence and a prima facie claim for punitive damages.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury

could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

**DISCUSSION**

I.  Alabama Law Controls

The parties dispute which law should apply to this case. Defendant argues, without providing support, that Louisiana law should apply because the matter is pending within the state of Louisiana against a Louisiana defendant. Plaintiff, on the other hand, argues that Alabama law applies.

Federal courts sitting in diversity are to apply state substantive law. *Times-Picayune Pub. Corp. v. Zurich Am. Ins. Co.*, 421 F.3d 328, 334 (5th Cir. 2005). This requires federal courts to apply the choice-of-law provisions of the state in which they sit. *Cain v. Altec Indus., Inc.*, 236 F. App'x 965, 967 (5th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Because this Court sits in Louisiana, it applies the choice-of-law provisions of Louisiana.

Louisiana's general rule is that "an issue of delictual and quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3542. Article 3542 further directs the Court to consider:

> (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring

wrongful conduct and of repairing the consequences of injurious acts.

*Id.* Article 3515 also instructs that a case involving contacts with other states "is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3515. The article lists the following factors to be considered:

> (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*Id.* The Fifth Circuit has synthesized the analysis as such:

> In sum, the choice of law methodology contained in Louisiana's Civil Code requires that, in sequence, we (1) examine the pertinent contacts of each state with respect to "the particular issue as to which there exists an actual conflict of laws" (so as to determine the "relationship of each state to the parties and the dispute"), (2) identify the various state policies that might be implicated in the choice of law, and then (3) evaluate the "strength and pertinence" of these policies in light of "the relationship of each state to the parties and the dispute," and in light of "the policies and needs of the interstate and international systems" (so as to resolve the ultimate question of which state's policies would be "most seriously impaired if its law were not applied to that issue").

*Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 487 (5th Cir. 2001).

Louisiana's only contact with respect to this case is that Defendant is located here. Mississippi has more pertinent contacts

because Plaintiff resides and has received treatment there. But Alabama has the most pertinent contacts. Defendant has a cosmetology school in Alabama and the event giving rise to this litigation occurred there. Neither party has identified various state policies that may be implicated by the choice of law. Accordingly, the strength and pertinence of Alabama's contacts outweighs that of the other states and its substantive law will be applied. *See Tolliver v. Naor*, 115 F. Supp. 2d 697, 704 (E.D. La. 2000) ("[T]he conflict of law rules of both Louisiana and New York indicate that Louisiana's law should be applied because the accident occurred in Louisiana between domiciliaries of different states.") As a result, Louisiana's Merchant Liability Act is not applicable.

## II. The Waiver of Liability

On the day of the incident at issue, Plaintiff signed a release form at the Aveda Institute. (Rec. Doc. 26-2 at 2.) The release included the following statement:

> I, the undersigned, have read and fully understand that all services rendered at the AVEDA INSTITUTES SOUTH are performed by students that are not yet licensed professionals but that are under the supervision of licensed educators. If I have any concerns regarding my service, it is my responsibility to notify management within 24 hours and/or the next business day. I further understand that any reconciliation of services will be solely at the discretion of the management and education staff. I AGREE TO ASSUME THE RISK OF ANY INJURY OR DAMAGE THAT I MIGHT SUFFER. I AGREE TO GIVE UP MY RIGHT TO SUE THE STUDENT, THE EDUCATOR OR THE SCHOOL FOR ANY DAMAGE TO MYSELF OR ANY PERSONAL PROPERTY.

7

(Rec. Doc. 26-3 at 1.)  Defendant argues that this exculpates it from liability.  Plaintiff contends that this signed document does not act as a release of liability because Alabama law does not recognize this type of agreement.

Plaintiff's argument relies primarily on a 1966 decision by an Alabama court of appeals.  In *Smith v. Kennedy*, the plaintiff went to the Birmingham Beauty College to have her hair treated. 43 Ala. App. 554, 195, 195 So. 2d 820, 822 (Ala. Ct. App. 1966). Before receiving the treatment, the plaintiff entered into a hold harmless agreement in which she acknowledged that she was having her hair done at a beauty school and that the students who would be serving her were not being held out as skilled and trained operators.  *Id*. at 822-23.  The hold harmless agreement also stated that the plaintiff would pay a reduced price for the services. *Id*.  In exchange, the plaintiff agreed to "in no wise hold the above named school, its proprietors, officers or agents, or any of its operators liable or accountable for any injury or damage that may occur to [her] as a result of work performed on [her] in this school." *Id*. at 823.  After signing the hold harmless agreement, the plaintiff underwent her hair treatment.  *Id*. at 824.  Some of the solution that the student used for the plaintiff's hair ran down to her back, neck, and head.  *Id*.  As a result, the plaintiff

experienced second degree burning and required hospitalization. *Id*.

The plaintiff in *Smith* sued the beauty college and other defendants for negligence and wanton injury. *Id*. at 822. The defendants argued that they were released from liability because the plaintiff signed the hold harmless agreement, but the appellate court disagreed. *Id*. Citing a 1943 Alabama Supreme Court case called *Housing Authority of Birmingham District v. Morris*, 244 Ala. 557, 563, 14 So. 2d 527, 531 (1943), the *Smith* court stated: "Under Alabama law a party may not by contract absolve himself from liability for the negligence of himself of his servants." *Smith*, 195 So. 2d at 823. Plaintiff argues that *Smith*, which is directly on point, serves as precedent for the instant case.

However, Defendant correctly points out that both *Smith* and the case upon which it relied have since been effectively overruled. In 1980, the Alabama Supreme Court stated:

> [A]fter carefully reviewing *all of the authority in this state*, we are compelled to conclude that, if the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld.

*Indus. Tile, Inc. v. Stewart*, 388 So. 2d 171, 176 (Ala. 1980) (emphasis added); *see also* 1 Ala. Pers. Inj. & Torts § 3:29 (2016 ed.) (noting that "[r]eleases, covenants not to sue, exculpatory

9

clauses, and limitation of liability clauses or agreements are similar in purpose" and applying the same standard for enforceability). Plaintiff has not identified any post-*Stewart* Alabama case where a court has held that a party could not contract against its own negligence. Nor has the Court identified any such case. Accordingly, it is not inherently contrary to Alabama law for Plaintiff and Defendant to enter into such a contract.

The next issue is whether the release was clear and unambiguous. Careful scrutiny is applied to agreements where one party agrees to indemnify the other party for its acts or omissions. *City of Montgomery v. JYD Int'l, Inc.*, 534 So. 2d 592, 594 (Ala. 1988). Such agreements are only enforceable when the indemnity provisions are unambiguous and unequivocal. *Id*. An indemnity contract such as the one at issue here is unambiguous "when its language specifically refers to the negligence of the indemnitee." *Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 555 (Ala. 1994). Nevertheless, the language of the contract need not be "talismanic" so long as the requisite intent is otherwise clear. *Id*.

Plaintiff argues that the release was either ambiguous or designed to only release Defendant from liability relating to any claims arising from hair services. Plaintiff argues that the release was not designed to release Defendant from liability arising out of unforeseen bodily injuries she might incur due to

dangerous conditions or negligent conduct. To support this argument, Plaintiff points to the testimony of the student hairstylist who was serving Plaintiff the day of the incident. The student testified in a deposition that she believed the release related to cosmetology services and not to personal injuries. Plaintiff argues that the student's understanding of the release provides insight into the release's actual purpose.

Despite Plaintiff's argument, there is nothing ambiguous about the release she signed on the date of this incident. It states in all capital letters that Plaintiff would assume the risk of any injury or damage that she might suffer and includes an agreement not to sue the student, the educator, or the school. Nothing in the release limits its application to cosmetology services. It is clear from the four corners of the document that Defendant intended to exculpate itself from all liability for any negligence while services were being rendered at the Aveda Institute. When a release of liability contains no ambiguity, the court is to interpret "the meaning and intentions of the parties as found within the four corners of the document." *Minnifield v. Ashcraft*, 903 So. 2d 818, 827 (Ala. Civ. App. 2004); *see also* Ala. Code § 12-21-109 ("All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and all judgments entered pursuant to pro tanto

11

settlements, must have effect according to their terms and the intentions of the parties thereto.")

The final issue is whether Defendant's conduct is to be classified as negligent or willful.  Although releases for future negligent acts or omissions are permissible, "releases as to future intentional tortious conduct [are] prohibited."  *Reece v. Finch*, 562 So. 2d 195, 200 (Ala. 1990); *see also Barnes v. Birmingham Int'l Raceway, Inc.*, 551 So. 2d 929, 932 (Ala. 1989) (holding that general pre-race releases providing exculpation from liability for wanton or willful conduct are against public policy and invalid); *Minnifield*, 903 So. 2d at 827.  Ala. § 6-11-20(b)(3) defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others."  Ala. Code § 6-11-20(b)(3).  A willful act is one that is "done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly or inadvertently."  *Deen v. Holderfield*, 155 So. 2d 314, 317 (1963).

Plaintiff argues that Defendant's conduct qualifies as wanton.  To support this position, Plaintiff directs the Court to deposition testimony stating that water was on the floor near where Plaintiff slipped and that the area near the hair wash bowls can be dark, making it difficult to see the floor.  Plaintiff also argues that there is "an issue of inadequate training" because the

student involved in the incident could not recall ever having been instructed on the danger of water being present on the floor. Additionally, Plaintiff argues that it is possible that the student handbook and other training materials handed out by Defendant do not include information regarding the danger of slip and falls. Finally, Plaintiff argues that other class action lawsuits filed against Defendant in previous years suggest that Defendant has failed to adequately prepare students for licensure. For all these reasons, Defendant argues that systemic safety failures rise to the level of recklessness or wantonness.

The Court is unconvinced. "Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of culpability." *Tolbert v. Tolbert*, 903 So. 2d 103, 114 (Ala. 2004). "Willfulness or wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term 'negligence,' which conveys the idea of inadvertence, as distinguished from premeditation or formed intention." *Id*. at 115 (internal citation omitted). Nothing in the description of the facts suggests that Defendant acted with wantonness. The student who was serving Plaintiff the day of the accident reported not seeing water on the floor as she walked Plaintiff to the hair rinsing station. Moreover, further deposition testimony of the student reveals that she was trained

to be careful not to spill water on the floor and to clean it up immediately when water did spill. The other lawsuits filed against Defendant are irrelevant to this case, and Plaintiff provides no evidence that the training provided by Defendant is inadequate. Defendant's conduct does not qualify as willful or wanton.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's *Motion for Summary Judgment Regarding Notice, Waiver, and Causation* **(Rec. Doc. 26)** and *Motion for Partial Summary Judgment on Punitive Damages* **(Rec. Doc. 27)** are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Bifurcate* **(Rec. Doc. 28)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine* **(Rec. Doc. 29)** is **DENIED AS MOOT**.

New Orleans, Louisiana this 2nd day of May, 2017.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE